IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff,*<br><br>vs.<br><br>JUAN JOSE JAVIER-GONZALEZ,<br>*Defendant.* | CRIMINAL NO. 25-302 (PAD) |

### SENTENCING MEMORANDUM

TO THE HONORABLE COURT:

Defendant Juan Jose Javier-Gonzalez, through counsel, respectfully submits this sentencing memorandum in support of a sentence of one-year probation. The facts of this case, and the factors set forth in 18 U.S.C. §3553(a), a probationary sentence is "sufficient, but not greater than necessary" to serve the purposes of sentencing.

### A. Juan's history and characteristics

Juan was raised in a loving, united household in the Dominican Republic. His parents instilled strong moral values, emotional support, and structure. The family lived in a stable home, and each child had their own bedroom. Life was steady and secure.

Everything changed when Juan was around 17 years old, and his mother became gravely ill with cancer. He and his mother were very close and watching her suffer was deeply traumatic. As the medical expenses increased, Juan left school after

1

the 7th grade to work and help pay for her treatment. Despite all efforts, his mother passed away, a loss that devastated the family.

After her death, the family unit fractured. Juan's siblings left the home, and his father moved to Santo Domingo for work. Juan, still a teenager, remained alone in the family home in Nagua. For years, he lived by himself, supporting himself through work and carrying the emotional burden of losing his mother and the dissolution of the family.

Despite these hardships, Juan has continued to act responsibly. He is the father of a 7-year-old daughter, for whom he provides financial support and remains committed. He also sends money to his father and siblings monthly.

His decision to come to Puerto Rico was driven by economic desperation and family obligation, not criminal motivation. During his time in Puerto Rico, Juan was working and providing for his loved ones. He did not engage in criminal behavior, use of drugs or any type of aggravating conduct.

Further, Juan has been on bail release since June 2025, abiding by all rules and complying with all conditions since his release.

### B. Undocumented individuals in BOP custody are categorically excluded from most educational, vocational, and rehabilitative programming

Under 18 U.S.C. §3553(a)(2)(D), the Court must consider "the need for the sentence imposed… to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." For defendants like Juan, who face an immigration detainer and eventual

2

deportation, the Bureau of Prisons (BOP) provides no meaningful access to rehabilitative, vocational, or reentry programming. As a result, a term of imprisonment would serve solely punitively.

Multiple independent investigations and government reports have documented BOP's failure to provide even basic rehabilitative resources to inmates without lawful immigration status[1]. These limitations are not incidental but structural, arising from regulations and policies that automatically deprioritize or exclude noncitizen inmates from programming. For example:

1) **Occupational Education and Vocational training:** BOP regulations expressly state that undocumented inmates may participate in occupational education programs only if resources remain after "meeting the needs of other eligible inmates."[2]

2) **Federal Prison Industries (UNICOR)**: Any inmate subject to an immigration detainer—or an order of deportation—is categorically barred from participating in UNICOR, the BOP's compensated job-training program that provides the most valuable work experience and skills inside federal prisons. [3]

3) **Reentry Preparation Programs:** The BOP bars undocumented inmates from the Release Preparation Program, which is specifically designed to

---

[1] https://www.themarshallproject.org/2017/10/17/federal-prisons-don-t-even-try-to-rehabilitate-the-undocumented
First Step Act to send 750 federal prisoners to ICE detention | The Marshall Project
States Are Deporting Non-U.S. Inmates—Should Federal Authorities Join the Effort?
[2] BOP Program Statement 5656.01 (Occupational Education Programs)
[3] BOP Program Statement 8120.02 (UNICOR Inmate Work Program)

help inmates transition back to the community. They are also excluded from faith-based reentry initiatives such as the Life Connections Program.

4) **The First Step Act Explicitly Excludes Immigrants from Earned Time Credits**: Congress reinforced this disparity in the First Step Act of 2018 by excluding noncitizens with immigration detainers from earning and applying time credits toward prerelease custody. *See:* 18 U.S.C. §3632(d)(4)(E)(i).

Thus, even when undocumented inmates complete approved programming, they cannot benefit from the early-release incentives Congress intended for rehabilitation. Accordingly, incarceration for undocumented individuals is harsher, more restrictive, and offers no rehabilitative benefit.

Incarceration in a case like Juan's provides no rehabilitative value and no benefit to the community. Without vocational training or rehabilitative training any period of incarceration would be punishment for its own sake, which is precisely what §3553(a) instructs courts to avoid. As such, rehabilitative concerns weigh especially strongly against a term of imprisonment when the defendant is subject to a deportation order[4].

### C. Juan will be subject to deportation

Juan is a citizen of the Dominican Republic with no legal status in the United States. As indicated on his PSR, an immigration detainer has been lodged against

---

[4] *United States v. Ching Chong,* 2014 WL 4773978 at 9 (E.D.N.Y. Sept. 24, 2014.)

4

him. This Court has discretion to weigh the possibility of future deportation when considering the §3553(a) factors in an effort to design an appropriate sentence.[5].

Courts have recognized that "[w]hen a defendant will ultimately be removed and sent out of the country, there is less need for the sentence imposed to protect the public from further crimes of the defendant…" *United States v. Ramirez-Ramirez*, 365 F.Supp.2d 728, 733 (E.D. Va. 2005); *United States v. Zapata-Trevino*, 378 F.Supp.2d 1321, 1328-1329 (D.N.M. 2005) ("From a deterrence standpoint … there is nothing to be gained by sentencing Defendant to a forty-one month sentence as a opposed to a fifteen month sentence.").

Finally, Juan's Total offense level is 4[6], with a criminal history of I, yields a guideline level from 0 to 6 months. According to the Guidelines, if the applicable guideline range is in Zone A, a sentence of imprisonment is not required unless the applicable guideline in Chapter Two expressly mandates such a term. *See* §5C1.1.[7]

**FOR THESE REASONS**, and considering the factors found at 18 U.S.C. § 3553(a), including this history and characteristics of the defendant, the nature and circumstances of the offense, the need to provide just punishment and the prospects of rehabilitation, Juan Jose Javier-Gonzalez requests that this Honorable Court deem a sentence of one-year probation, to be sufficient, but not greater than necessary to accomplish the goals of deterrence and public safety.

---

[5] United States v. Hercules, 947 F. 3d., 9 (1st Cir. 2020).
[6] Mr. Javier has no prior convictions; accordingly, he is entitled to zero-point offender reduction under §4C1.1.
[7] Application Note No. 9: If the defendant received an adjustment under §4C1.1 and the defendant's applicable guideline range is in Zone A or B of the Sentencing Table, a sentence other than a sentence of imprisonment, in accordance with subsection (b) or (c)(3), is generally appropriate.

**I HEREBY CERTIFY** that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the parties of record.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, this 1st day of December 2025.

<div style="margin-left: 3em;">

RACHEL BRILL
FEDERAL PUBLIC DEFENDER
District of Puerto Rico

*s/Laura I. Soto-Santiago*
Laura I. Soto-Santiago
Assistant Federal Public Defender
USDC-PR 302905
241 F.D. Roosevelt Ave.
Hato Rey, P.R. 00918-2441
(787) 281-4922/ Fax (787) 281-4899
E-mail: Laura_Soto@fd.org

</div>